## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal Action No. 07-50-JJF |
| Plaintiff, : | |
| v. : | |
| : | |
| JOHN GRANT, III, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S PRE-HEARING RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

COMES NOW, the United States, by and through its undersigned counsel, Colm F. Connolly, United States Attorney, and Douglas E. McCann and Seth M. Beausang, Assistant United States Attorneys, and respectfully submits the following response in opposition to Defendant's Motion to Suppress Physical Evidence and Statements. For the following reasons, Defendant's Motion should be denied:[1]

**I.     Government's Proposed Findings Of Fact.**

1.     The Government expects the evidence at the hearing on Defendant's Motion will show that on March 15, 2007, a Wilmington Police Officer observed the Defendant driving a silver vehicle in the 1200 block of North Walnut Street in Wilmington, Delaware. The Officer conducted a traffic stop of the Defendant's vehicle based on the Officer's reasonable suspicion that the front driver and passenger windows on the Defendant's vehicle had excessive tinting in

---

[1] The facts contained in this opposition are based on the evidence the Government expects will be introduced at any hearing on Defendant's Motion. Only those facts necessary to respond to Defendant's Motion are stated. The Government will supplement its opposition with evidence from the record after the hearing.

violation of 21 Del. C. § 4313 (2007).

    2.    After stopping the Defendant's vehicle, the Officer checked the Defendant's name in the state police computer records and determined that the Defendant was on probabation. The Officer then asked the Defendant for proof of insurance. The Defendant was not able to provide the Officer proof of insurance for his vehicle as required by 21 Del. C. § 2118 (2007). The Officer then told the Defendant that his vehicle could be subject to impoudment and an inventory search based on the Defendant's inability to provide proof of insurance. The Officer asked the Defendant if there was anything inside the car that could be a safety threat to the Officer. The Defendant responded that he had an open containor of beer on the floor behind the front passenger seat. The Officer asked the Defendant if there was anything else that could be a safety threat. The Defendant responded that he had a loaded 9 millimeter pistol under the front passenger seat. The Defendant was then removed from the vehicle, taken into custody, and administered <u>Miranda</u> warnings. The Officer conducted an inventory search of Defendant's vehicle and found a loaded firearm where Defendant had indicated. After knowingly, intelligently and voluntarily waiving his <u>Miranda</u> rights, the Defendant made additional voluntary and inculpatory statements.

    3.    The Government expects that an expert will testify that if an officer cannot see inside a vehicle through the windows, that means the windows are less than 70% transparent. This witness will also testify that he tested the Defendant's vehicle's windows using a tintometer and found that the windows were, in fact, less than 70% transparent.

**II.    Government's Proposed Conclusions Of Law.**

    **A.    The Wilmington Police Officer Had Reasonable Suspicion To Believe That Defendant's Vehicle Violated Delaware's Window-Tinting Law.**

    4.    To conduct an investigatory traffic stop police officers must have reasonable suspicion to believe that an individual has violated the traffic laws. See, e.g., United States v. Delfin-Colina, 464 F.3d 392, 396-98 (3d Cir. 2006). Here, the Government believes that the evidence will show that the Officer reasonably suspected that the Defendant had violated 21 Del. C. § 4313 by operating a vehicle with excessively tinted windows. See 21 Del. C. § 4313(a) (2007) ("No person shall operate any motor vehicle on any public highway, road or street with the front windshield, the side windows to the immediate right and left of the driver and/or side wings forward of and to the left and right of the driver that do not meet the requirements of Federal Motor Vehicle Safety Standard 205 in effect at the time of its manufacture.").[2]

    5.    Courts have repeatedly found that officers have reasonable suspicion to believe that an individual is operating a vehicle with excessivly tinted windows in violation of state laws like Delaware's when the officer cannot see into the vehicle through the windows. See, e.g., United States v. Leal, No. 06-1447, 2007 WL 1655658, at *1 (3d Cir. June 8, 2007) (upholding stop of vehicle based on violation of Pennsylvania's restrictions on window tinting because "Whether or not Leal's car was technically in violation of the statute, Officer Volk could have

---

[2]Pursuant to its authority under 21 Del. C. § 302, and to "assist police officers in enforcing the [window-tinting law] law," the Delaware Department of Transportation, Division of Motor Vehicles has adopted regulations that require that vehicle windows "must provide a light transmission of not less than 70 percent." See Delaware v. Trower, No. 0607014181, 2007 WL 1218682, at *2 (Del. Super. Ct. Apr. 18, 2007) (quoting Delaware Dept. of Transportation, Division of Motor Vehicles, DE ADC 2 2000 2277, at 2.0, 3.1.2 (Westlaw) (2007) (attached as Ex. A)).

reasonably believed that Leal was in violation of the statute because the windows were heavily tinted.");[3] Delaware v. Trower, No. 0607014181, 2007 WL 1218682, at *3 (Del. Super. Ct. Apr. 18, 2007) ("The contention that the officer must look at the windows from inside the vehicle before he can be reasonably suspicious that they violate the standard is unpersuasive. 'Reasonable suspicion' is not a demanding standard. It is less than probable cause and considerably less than preponderance of the evidence. The State's contention, that a reasonable suspicion of a violation arises where an officer cannot see the occupants in the vehicle, is more persuasive."); United States v. Kennedy, No. 06-591, 2007 WL 1366967, at *1-2 (E.D. Pa. May 2, 2007) (upholding stop of vehicle based on violation of Pennsylvania's restrictions on window tinting because "Cpl. Neuhaus could not see the driver through the tinted side window, but could see the passenger in the light from the store through the car's front window . . . [and] using his experience as a police officer, recognized the front window tint exceeded the legal limit of 30 percent tint."); United States v. Roberts, No. 01-CR-251, 2001 WL 1159854, at *3 (E.D. Pa. Sept. 5, 2001) ("Here, Officer Clee had a reasonable suspicion that Defendant's vehicle was tinted to a degree in violation of the Pennsylvania Motor Vehicle Code, Section 4524(e)(1). This suspicion was based on the specific and articulable fact of Officer Clee's observation of the tinted windows [and inability to see into the vehicle] as they passed before his patrol car, combined with his extensive experience in evaluating the level of tint in automobile windows."), aff'd 77 Fed. App'x 561 (3rd Cir.); but see United States v. Fong, 662 F. Supp. 1319, 1322 (D. Del. 1987) (denying the defendant's motion to suppress, but stating with regards to the traffic

---

[3]Pennsylvania's administrative code, like Delaware's, requires that vehicle windows be at least 70% transparent. See 67 PA ADC T. 67, Pt. I, Subpt. A, Art. VII, Ch. 175, Subch. O, Table X (Westlaw) (attached as Ex. B) (2007).

stop based on the officer's suspicion that the windows were tinted too heavily, it "clearly was unreasonable to infer, from an inability to see into the car from the outside, an inability to see out of the car from the inside").

      6.      Here, the Government believes that the evidence will show that the Defendant's vehicle windows were excessively tinted in violation of state law. The Government believes that the evidence will also show that the Officer reasonably suspected that the windows were excessively tinted in violation of state law based on his inability to see into the vehicle through the windows. See, e.g., United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995) ("However, a stop to check a driver's license and registration is constitutional when it's based on an 'articulable and reasonable suspicion that . . . either the vehicle or an occupant' has violated the law.") (quoting Delaware v. Prouse, 440 U.S. 648, 663 (1979)). Accordingly, Defendant's motion to suppress based on a purported illegal vehicle stop should be denied.

      **B.**      **The Defendant's Pre-Miranda Admission That He Possessed A Firearm Is Admissible Because The Defendant Was Not In Custody During The Traffic Stop.**

      7.      The Defendant's suggestion that the Officer was required to advise him of his Miranda rights after the Defendant's vehicle was stopped, but before the Defendant was formally arrested, should also be rejected. It is well-settled that a person is not in custody for purposes of Miranda merely because the person has been subjected to a traffic stop. See, e.g., Berkemer v. McCarty, 468 U.S. 420, 442 (1984) (holding that an officer questioning a suspect during a routine traffic stop does not amount to custodial interrogation for Fifth Amendment purposes). To determine whether Miranda warnings are required prior to questioning in the context of a traffic stop, the Court must "examine the totality of the circumstances in making a determination

as to whether there was a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." United States v. Prince, 157 F. Supp. 2d 316, 324 (D. Del. 2001).

8. Here, the Government believes that the evidence will show that at the time the Defendant made his pre-Miranda statements, the Defendant had merely been subjected to a routine traffic stop and not a formal arrest or restraint of movement of the degree associated with a formal arrest. Indeed, this Court has held that, in the context of a traffic stop, a pre-Miranda response to the question, is there "anything illegal in the car," was admissible because the defendant was not in custody prior to being formally arrested. See Prince, 157 F. Supp. 2d at 325; see also United States v. Edwards, 53 F.3d 616, 619 (3d Cir. 1995) (holding that "when police officers make an investigative stop, they may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop'") (quoting United States v. Hensley, 469 U.S. 221, 235 (1985)). Accordingly, because the Defendant was not in custody when he admitted to possessing a firearm, that statement should be admissible even though the Defendant had not yet been advised of his Miranda rights.[4]

9. To the extent the Defendant is challenging the admission of his statements after being advised of his Miranda rights, the Government believes that the evidence will show that

---

[4] Even if the Court were to conclude that Defendant was in custody during the brief traffic stop and otherwise entitled to Miranda warnings, the Defendant's pre-Miranda statements would still be admissible because the Officer's question – i.e., is there anything in the vehicle that might be a safety threat – fell withing the Quarles public safety exception to Miranda because it was designed "to secure [the officer's] safety or the safety of the public" and not "designed solely to elicit testimonial evidence from a suspect." New York v. Quarles, 467 U.S. 649, 658-59 (1984); see also United States v. Williams, 282 F. Supp. 2d 586, 598 (E.D. Mich. 2003) ("[R]egardless of whether Officer Simpson asked Defendant whether there was anything in the vehicle that might 'poke or hurt' the officers, or simply whether there was anything that he needed to know about, the Court concludes that these questions fall within the public safety exception to Miranda.").

the Defendant knowingly, intelligently, and voluntarily waived those rights and, accordingly, that his post-<u>Miranda</u> statements are admissible.

      10.     For all of the foregoing reasons, the Government respectfully requests that Defendant's motion to suppress be denied. A proposed Order is attached hereto.

Dated: August 20, 2007.

                      Respectfully submitted,

                      COLM F. CONNOLLY
                      United States Attorney

            By:    /s/ Douglas E. McCann
                      Douglas E. McCann
                      Seth M. Beausang (De. I.D. No. 4071)
                      Assistant United States Attorneys
                      The Nemours Building
                      1007 Orange Street, Suite 700
                      P.O. Box 2046
                      Wilmington, DE 19899-2046
                      (302) 573-6277

                      Attorneys for the United States

**CERTIFICATE OF SERVICE**

      I, Seth M. Beausang, hereby attest under penalty of perjury that on this 20th day of August, 2007, I caused a copy of the Government's Pre-Hearing Response to Defendant's Motion to Suppress Physical Evidence and Statements and Proposed Order to be served on the following counsel for Defendant by electronic filing:

Eleni Kousoulis
Federal Public Defender's Office
First Federal Plaza, Suite 110
704 King Street
Wilmington, DE 19801
(302) 573-6010

                                    /s/ Seth M. Beausang
                              Seth M. Beausang (De. I.D. No. 4071)

# EXHIBIT A

DE ADC 2 2000 2277                                                                                                              Page 1
Code Del. Regs. 2 2000 2277
CDR 2 2000 2277

CODE OF DELAWARE REGULATIONS
85. DEPARTMENT OF TRANSPORTATION
2000. DEPARTMENT OF TRANSPORTATION; DIVISION OF MOTOR VEHICLES (2200)
2277. APPROVED TINTING FOR SIDE WINDOWS
Copyright (c) 2007 by LexisNexis Matthew Bender, Albany, New York

Current through May 2007 (Issue 126)

2 2000 2277. Approved Tinting for Side Windows

**Section 1.0 Introduction.**

Whereas, 21 Del. C. §. 4313 was amended in June 1990, to read as follows:

§4313. Altering Windshield, Front Side Windows, and Side Wings

(a) No person shall operate any motor vehicle on any public highway, road, or street with the front windshield, the side windows to the immediate right and left of the driver, and/or side wings forward of and to the left and right of the driver that do not meet the requirements of Federal Motor Vehicle Safety Standard 205 in effect at the time of its manufacture.

(b) Nothing in this section shall prohibit the use of any products or materials along the top edge of the windshield so long as such products or materials are transparent and do not encroach upon the AS-1 portion of the windshield as provided by FMVSS 205 and FMVSS 128"; and

(c) No person shall operate any motor vehicle on any public highway, road, or street which does not conspicuously display a certificate by the manufacturer of any "after manufacture" window tinting material which may have been installed that such window tinting material meets the requirements of Federal Motor Vehicle Safety Standard 205 in effect at the time of the vehicle's manufacture. It shall be a valid defense to any charge under this subsection if the person so charged produces in court a validated Mandatory Inspection Notice showing that the Division of Motor Vehicles has examined the motor vehicle since the date of offense and certifies compliance with FMVSS 205."

**Section 2.0 Authority.**

Whereas, the Department of Transportation needs a more definitive method in which to determine which products or materials are acceptable at the time of the vehicle safety inspection and to assist police officers in enforcing the law, the following regulation is adopted pursuant to 21 Del.C. §302.

**Section 3.0 Glass Coating Material on Motor Vehicles.**

3.1 The following regulations establish standards and specifications for the use of glass coating material and sun screening devices:

3.1.1 Glass coating material placed, displayed, installed, affixed, or applied upon the windshield of a motor vehicle shall not extend below the AS -1 portion of the windshield as provided by FMVSS 205 and FMVSS 128. The material shall not extend more than five (5) inches down from the uppermost part of the windshield on older vehicles where no AS - 1 mark is indicated on the windshield.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3.1.2 The front side wing vents and windows to the immediate right and left of the driver must comply with the requirements of Federal Motor Vehicle Safety Standard 205. Glass coating material (film tint), when used in conjunction with glazing (vehicle glass) material, must provide a light transmission of not less than 70 percent. All specifications in this rule shall be within normal manufacturer's tolerance, i.e., +- 3%.

3.1.3 Rear window or windows may be applied with glass coating material in conjunction with glazing (vehicle glass) if the motor vehicle is equipped with outside mirrors on both left and right hand sides of the vehicle.

3.1.4 Rear window mounted brake lights on 1986 and later vehicles will be clear of any tint material.

3.1.5 The law applies to all motor vehicles which are operated on the roads and highways in this State, regardless of where such vehicles are registered.

9 DE Reg. 1988 (06/01/06)

<General Materials (GM) - References, Annotations, or Tables>
Code Del. Regs. 2 2000 2277, **DE ADC 2 2000 2277**

**DE ADC 2 2000 2277**
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Case 1:07-cr-00050-JJF  Document 15-3  Filed 08/20/2007  Page 1 of 2

67 PA ADC T. 67, Pt. I, Subpt. A, Art. VII, Ch. 175, Subch. O, Table X                      Page 1
67 Pa. Code T. 67, Pt. I, Subpt. A, Art. VII, Ch. 175, Subch. O, Table X

PENNSYLVANIA ADMINISTRATIVE CODE
TITLE 67. TRANSPORTATION
PART I. DEPARTMENT OF TRANSPORTATION
SUBPART A. VEHICLE CODE PROVISIONS
ARTICLE VII. PRELIMINARY PROVISIONS
CHAPTER 175. VEHICLE EQUIPMENT AND INSPECTION
SUBCHAPTER O. VEHICLE SUN SCREENING DEVICES

Current through Supp. 393 (August 2007)

Table X.

TABLE X--ACCEPTABLE LIGHT TRANSMITTANCE LEVELS FOR VEHICLEGLAZING
All light transmittance levels listed below assume a 3% accuracy (+3%).

| Vehicle Type | Windshield | Front Side Windows/Wings | Rear Side Windows/Wings | Rear Window |
|---|---|---|---|---|
| Pre-1998 Passenger Cars [FNa1] | 70% | 70% | 70% | VESC-20 |
| 1998 & Newer Passenger Cars | 70% | 70% | 70% | 70% |
| Trucks & Multi-Purpose Passenger Vehicles | 70% | 70% | No Requirement | No Requirement |
| Medium/Heavy Trucks & Buses | 70% | 70% | No Requirement | No Requirement |
| All Other Vehicles | 70% | 70% | No Requirement | No Requirement |

Authority

The provisions of this Table X issued under the Vehicle Code, 75 Pa.C.S. §§ 4103, 4521, 4524 and 6103.

Source

The provisions of this Table X adopted September 27, 1996, effective September 28, 1996, 26 Pa.B. 4640.

<General Materials (GM) - References, Annotations, or Tables>

67 Pa. Code T. 67, Pt. I, Subpt. A, Art. VII, Ch. 175, Subch. O, Table X, 67 PA ADC T. 67, Pt. I, Subpt. A, Art. VII, Ch. 175, Subch. O, Table X

67 PA ADC T. 67, Pt. I, Subpt. A, Art. VII, Ch. 175, Subch. O, Table X
END OF DOCUMENT

COPR. © WEST 2007 NO CLAIM TO ORIG. U.S. GOVT. WORKS

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal Action No. 07-50-JJF |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| JOHN GRANT, III, | : | |
| | : | |
| Defendant. | : | |

# ORDER

AND NOW, this ___ day of _____, 2007, after consideration of Defendant's Motion to Suppress Physical Evidence and Statements, and all evidence and filings offered in support thereof and opposition thereto, IT IS ORDERED that Defendant's Motion is DENIED.

IT IS SO ORDERED.

                                                                             _____
                                                                             HONORABLE JOSEPH J. FARNAN, JR.
                                                                             UNITED STATES DISTRICT JUDGE